```
            UNITED STATES DISTRICT COURT
          SOUTHERN DISTRICT OF WEST VIRGINIA
                   AT CHARLESTON
```

SALLY STEWART,

       Plaintiff

v.                                    Civil Action No. 2:09-126
                                           (lead case)


WEST VIRGINIA EMPLOYERS' MUTUAL
INSURANCE COMPANY, a West
Virginia corporation doing
business as BrickStreet Mutual
Insurance Company and BrickStreet
Administrative Services,

       Defendant

_____


BETTY MCGHEE,

       Plaintiff

v.                                    Civil Action No. 2:09-127

WEST VIRGINIA EMPLOYERS' MUTUAL
INSURANCE COMPANY, a West
Virginia corporation doing
business as BrickStreet Mutual
Insurance Company and BrickStreet
Administrative Services,

       Defendant


                MEMORANDUM OPINION AND ORDER


      Pending are the plaintiffs' motions to remand, filed

March 11, 2009, and March 23, 2009.  Also pending is the

plaintiffs' motion to supplement the exhibits to their motions to

remand, filed April 29, 2009, which motion is ORDERED granted.


                        I. Procedural Background


        This action arose after the plaintiffs, Sally Stewart

and Betty McGhee, were denied long term disability benefits on

the ground that their disabilities were pre-existing conditions.

The plaintiffs instituted separate actions in the Circuit Court

of Kanawha County on February 15, 2007 and March 2, 2007, naming

three defendants to their substantially identical two-count

complaints:  Commercial Insurance Service, Inc. ("CIS"), Guardian

Life Insurance Company of America ("Guardian"), and West Virginia

Employers' Mutual Insurance Company, doing business as

BrickStreet Mutual Insurance Company and BrickStreet

Administrative Services ("BrickStreet").  BrickStreet was the

plaintiffs' employer.  Guardian was the insurer and administrator

of BrickStreet's benefits plan, and, according to the complaints,

CIS was BrickStreet's agent and advocate regarding the benefits

program.[1]  Count I alleged negligence, fraud in the inducement,

and breach of contract under state law against BrickStreet and

CIS.  Count II was a claim against CIS, Guardian, and BrickStreet

_____

        [1] The plaintiffs settled with CIS, and CIS was dismissed on
March 17, 2008.

                                2

for benefits arising under the Employee Retirement Income
Security Act of 1974 ("ERISA").

In March 2007, the defendants removed both cases to
this court on the basis of complete preemption under ERISA.[2]  The
plaintiffs moved to remand, and their motion was denied by order
entered December 5, 2007.  In the order, the court held that
Count II plainly stated a claim for benefits under ERISA, of
which this court had jurisdiction, and that the court had
supplemental jurisdiction over Count I under 28 U.S.C. § 1367 by
virtue of its joinder with Count II.  The court did not consider
whether Count I was completely preempted.

In December 2007, BrickStreet moved to dismiss Count I
on the ground that it was preempted by § 514 of ERISA (ordinary
preemption), or in the alternative, to recharacterize Count I as
a federal claim pursuant to § 502(a) of ERISA on the basis of
complete preemption.  In March 2008, BrickStreet, Guardian, and
the plaintiffs filed motions for summary judgment, and the
plaintiffs renewed their motions to remand Count I.

By order entered September 25, 2008, the court denied

---

[2] Stewart's case was assigned number 2:07-cv-168, and
McGhee's case was assigned number 2:07-cv-222.

BrickStreet's motion to dismiss or, in the alternative, to recharacterize Count I as a federal claim.  The court held that Count I, when viewed in the light most favorable to the plaintiffs, sought damages measured by benefits that the plaintiffs may have been entitled to under a governmental benefits plan in connection with their previous employment with the State which they gave up in accepting employment with BrickStreet in reliance on the promises made by the defendants regarding the benefits to which they believed they were entitled under BrickStreet's benefits plan.  On the same day, the court granted summary judgment to Guardian and BrickStreet on Count II and dismissed Count II, but denied summary judgment as to Count I.  The court remanded Count I to the Circuit Court of Kanawha County on the ground that the only federal issue (Count II) had been resolved and the only remaining issue (Count I) was not related to any issues of federal policy.

On February 11, 2009, the defendants again removed the plaintiffs' cases.[3]  The cases were consolidated on March 23, 2009.  BrickStreet is the only remaining defendant, and Count I is the only pending claim.  As grounds for removal, BrickStreet

---

[3] Each case was assigned a new case number.  Stewart's case was assigned number 2:09-cv-126, and McGhee's case was assigned number 2:09-cv-127.

4

again contends that Count I is completely preempted.  BrickStreet

now bases its contention on the plaintiffs' responses to

BrickStreet's interrogatories, which were served and responded to

in state court after the cases were remanded.  The plaintiffs'

responses indicate that the plaintiffs seek not only damages

measured by benefits foregone, but also damages measured by the

benefits available under BrickStreet's ERISA benefits plan.

The relevant interrogatories and responses state as
follows:

INTERROGATORY NO. 1: State whether or not all or any
part of the compensation that you seek to recover from
BrickStreet in this action includes (I) payments
equaling 60 percent of your monthly earnings as a
BrickStreet employee for each month beginning on a date
some time in calendar year 2006 until you reach age 65
or (ii) an amount that is based in any way on payments
equaling or the value of 60 percent of your monthly
earnings as a BrickStreet employee.

ANSWER: Plaintiff in her state law claim in Count
I seeks a one-time lump sum of damages for loss of
benefits including recall rights, sick leave,
healthcare, and regular and disability benefits
which she would have been eligible to receive from
the State of West Virginia had not BrickStreet
breached the employment contract.  Plaintiff also
seeks mental anguish, annoyance, inconvenience,
and punitive damages because BrickStreet is guilty
of fraud and negligence in the inducement of the
plaintiff to leave her job with the State of West
Virginia and accept employment with BrickStreet.
Based upon information provided to me by my
attorney, damages may be measured in part by the
loss of the 60% of the monthly earnings.

INTERROGATORY NO. 2: If the answer to Interrogatory No. 1 is no,

a.    Explain in detail the nature and amount of the compensation that you are seeking to recover from BrickStreet in this action; and

b.    Explain precisely how you determined such amount.

        ANSWER: No answer required.

INTERROGATORY NO. 3: If the answer to No. 1 is yes,

a.    Explain the reason that you believe you are entitled to such compensation; and

b.    State the date in 2006 from which you are seeking payments of 60 percent of your monthly salary as a BrickStreet employee or the value of such payments; and

c.    If you are seeking compensation from BrickStreet in this action an amount that is based in any way on payments equaling 60 percent of your monthly earnings as a BrickStreet employee explain precisely how you determined such amount; and

d.    Explain in detail the nature and amount of any compensation, in addition to that which is described in Interrogatory No. 1, that you seek to recover from BrickStreet in this action; and

e.    Explain precisely how you determined such additional compensation.

        ANSWER:

        a.    BrickStreet breached its contract and was guilty of fraud and negligence.

        b-c.  A jury may be allowed to consider and my damages may be measured in part by my lost disability benefits which I would have received which may be calculated at 60% of my monthly salary of $2,990.00, from the date of

6

> my disability on March 20, 2006, until I
> reach the age of 65 on March 18, 2018.
>
> d-e. Damages for breach of contract, negligence,
> mental anguish, annoyance and inconvenience,
> and punitive damages are for the jury to
> decide.

(Mem. Supp. Mot. 6-7).

On February 9, 2009, before BrickStreet removed the
plaintiffs' actions to federal court, BrickStreet notified the
plaintiffs that it considered their responses to interrogatories
1 and 3 insufficient.  Specifically, BrickStreet observed with
respect to interrogatory number 1 that the plaintiff was seeking
damages for loss of state benefits in addition to damages
measured by 60 percent of the plaintiffs' monthly BrickStreet
compensation to age 65.  As to interrogatory number 3,
BrickStreet requested that the plaintiffs explain how they
intended to calculate the amount of lost state benefits.  The
plaintiffs responded on April 29, 2009, with supplemental answers
to BrickStreet's interrogatories.  In the supplemental answers,
the plaintiffs demonstrated their calculation of lost state
benefits, but did not dispute BrickStreet's observation that they
were seeking damages measured by 60 percent of their monthly
BrickStreet compensation to age 65 in addition to lost state
benefits.

7

II. Waiver


        The plaintiffs contend that they are entitled to remand

because BrickStreet has waived its right to remove by engaging in

sufficient activity in state court to manifest an intent to

litigate there.  The plaintiffs base their argument on two

actions taken by BrickStreet in state court after the basis for

removal became apparent, namely, BrickStreet's signing of a

proposed agreed order to consolidate the plaintiffs' cases and

BrickStreet's request to the plaintiffs for an extension of time

in which to object to the plaintiffs' discovery responses.


        A defendant may waive its thirty-day right to removal

under 28 U.S.C. 1446(b) if it demonstrates a "clear and

unequivocal" intent to remain in state court, but "such a waiver

should only be found in 'extreme situations.'"  Grubb v. Donegal

Mut. Ins. Co., 935 F.2d 57, 59 (4th Cir. 1991) (holding that

defendant did not waive right to removal where it participated in

a hearing on its motion for summary judgment despite the

dismissal of the non-diverse party, which occurred at the

beginning of the same hearing); compare Aqualon Co. v. MAC

Equip., Inc., 149 F.3d 262 (4th Cir. 1998) (holding that

defendant did not waive right to remove where defendant filed

8

removal papers and then filed a notice of removal and a third party motion for summary judgment in state court); and Sayre Enter., Inc. v. Allstate Ins. Co., 448 F. Supp. 2d 733 (W.D. Va. 2006) (finding no waiver where defendant filed an answer and grounds of defense, a motion craving oyer and demurrer, and objections to the plaintiff's first set of discovery requests in state court before removing); and Hawes v. Cart Prods., Inc., 386 F. Supp. 2d 681 (finding no waiver where defendant filed motion for relief from default, a motion challenging service of process, a motion to continue a damages hearing, and a motion to shorten the time for discovery responses in state court before removing); with Wolfe v. Wal-Mart Corp., 133 F. Supp. 2d 889 (N.D. W. Va. 2001) (holding that defendant waived right to removal where it filed a motion for summary judgment in state court while on notice that the non-diverse party was being dismissed from the case).

The court concludes that BrickStreet's signing of a proposed agreed order of consolidation and BrickStreet's request for an extension of time in which to object to the plaintiffs' discovery responses do not constitute the type of actions that demonstrate a "clear and unequivocal" intent to remain in state court. Nothing about the circumstances of BrickStreet's conduct

makes this an "extreme situation."  Accordingly, BrickStreet has
not waived its right to remove to federal court.


### III. Jurisdiction


          The plaintiffs contend that this action should be
remanded because they are seeking only reliance damages --
damages measured by the benefits they gave up as state employees
when they left their employment with the state and accepted
employment with BrickStreet.  The court has already determined
that such a claim affects BrickStreet's ERISA plan "in too
tenuous, remote, or peripheral a manner" to be completely
preempted.  As BrickStreet aptly notes, however, the plaintiffs'
responses to BrickStreet's interrogatories belie their
representations to the court as to the damages they seek.
According to their interrogatory responses, the plaintiffs are
seeking not only reliance damages, but also damages measured by
the loss of 60% of their monthly earnings as BrickStreet
employees.  To the extent the plaintiffs seek the latter form of
damages, it appears that they are attempting to use their state
claims as an alternative enforcement mechanism to obtain benefits
under an ERISA benefit plan.  Their claims are, accordingly,
completely preempted.

Complete preemption is a narrow exception to the well pleaded complaint rule.  <u>Caterpillar Inc. v. Williams</u>, 482 U.S. 386, 393 (1987).  Under this doctrine, a federal district court has subject matter jurisdiction if "the subject matter of a putative state law claim has been totally subsumed by federal law – such that state law cannot even treat on the subject matter." <u>Lontz v, Tharp</u>, 413 F.3d 435, 439-40 (4th Cir. 2005).  When complete preemption exists, federal law provides the exclusive cause of action, and in essence "there is . . . no such thing as a state-law claim."  <u>Id.</u> at 440 (quoting <u>Beneficial Nat'l Bank v. Anderson</u>, 539 U.S. 1, 11 (2003)).  "The doctrine of complete preemption thus prevents plaintiffs from 'defeat[ing] removal by omitting to plead necessary federal questions.'"[4]  <u>Id.</u> (quoting

---

[4] The doctrine of complete preemption is starkly different from the defense of federal conflict or ordinary preemption. <u>Metro. Life Ins. Co. v. Taylor</u>, 481 U.S. 58, 63-64 (1987); <u>Pinney v. Nokia, Inc.</u>, 402 F.3d 430, 449 (4th Cir. 2005). "Under ordinary or conflict preemption, 'state laws that conflict with federal laws are preempted, and preemption is asserted as a federal defense to plaintiff's suit.'"  <u>Sonoco Prods. Co. v. Physicians Health Plan Inc.</u>, 338 F.3d 366, 370-71 (4th Cir. 2003).  As the Fourth Circuit has explained:

> The absence of a federal cause of action says nothing about whether the state claim is preempted in the ordinary sense: it is entirely within the power of Congress to completely eliminate certain remedies by preempting state actions, while providing no substitute federal action.  But in such cases, preemption serves only as a federal defense, the barred claims are not

<u>Franchise Tax Bd. v. Constr. Laborers Vacation Trust</u>, 463 U.S. 1, 22 (1983)).

A state law claim is completely preempted and the action is, accordingly, removable under ERISA if the state law claim "relates to" an employee benefit plan within the meaning of section 514(a), 29 U.S.C. § 1144(a), and falls within the scope of the statute's civil enforcement provisions, which are found in section 502(a), 29 U.S.C. § 1132(a). <u>Smith v. Dunham-Bush, Inc.</u>, 959 F.2d 6, 8 (2d Cir. 1992). ERISA § 502(a) provides in pertinent part:

> A civil action may be brought–(1) by a participant or beneficiary– . . . (B) to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan . . . .

29 U.S.C. § 1132(a)(1)(B)("ERISA § 502(a)(1)(B)").

───────────────

completely preempted, and thus not removable to federal court.

<u>King v. Marriott Int'l</u>, 337 F.3d 421, 425 (4th Cir. 2003). A case cannot be removed pursuant to section 1331 solely on the basis of federal conflict or ordinary preemption defenses but can be removed if the complete preemption doctrine applies. <u>Pinney</u>, 402 F.3d at 449; <u>King</u>, 337 F.3d at 425; <u>Abbot v. Am. Cynamid Co.</u>, 844 F.2d 1108, 1111 (4th Cir. 1988). It is important to note the federal preemption defense may still be properly raised in state court if the complete preemption doctrine is found not to be present and remand is appropriate. <u>See</u> <u>e.g.</u> <u>Caterpillar, Inc.</u>, 482 U.S. at 397; <u>King</u>, 337 F.3d at 425.

The plaintiffs' claims of entitlement to damages measured by the loss of 60% of their monthly earnings as BrickStreet employees are similar to the state law claims alleged by the plaintiff in Chapman v. Health Works Med Group of West Virginia, Inc., 170 F. Supp. 2d 635 (N.D. W. Va. 2001) (Keeley, J.), which the court found to be completely preempted.  According to the Chapman plaintiff, his claims were not preempted by ERISA because he was not seeking benefits from the plan or asserting wrongdoing by the plan personnel.  Id. at 639.  Rather, he contended he was suing his former employer for damages because the employer falsely represented that his disability benefits would continue without interruption during his employer's merger with another company, and because the employer's misrepresentations fraudulently induced him to allow his disability benefits to expire without converting to an individual policy.  Id.  The court held that although the plaintiff's tort claims did not expressly refer to ERISA or affect the structure or administration of the plan, the plaintiff was using state law as an alternative enforcement mechanism to receive ERISA plan benefits, and so his claim was "related to" an employee benefit plan within the meaning of section 514(a).  Id. at 640.  The court further held that inasmuch as the plaintiff's damage request was couched in terms of policy benefits, he was

13

essentially seeking to recover or enforce benefits due him as a
former employee and plan participant based on the oral promise of
his employer, and, so, his claim was preempted by section 502(a).
Id. at 641.  Similarly, to the extent the plaintiffs here are
seeking damages couched in terms of BrickStreet's plan benefits,
it appears that they are using state law as an alternative
enforcement mechanism to receive plan benefits.

          The plaintiffs contend that their state claims are more
akin to the claims asserted in Pizlo v. Bethlehem Steel Corp.,
884 F.2d 116 (4th Cir. 1989), which the court determined were not
completely preempted.  In Pizlo, the defendant employer modified
the terms of the pension plan to include a penalty for early
retirement.  Id. at 117.  In a meeting with employees about the
change to the plan, the employer represented to the plaintiffs
that there would be no more cuts in staff.  Id.  Two and a half
years later, the plan was amended to freeze the level of
retirement benefits to those earned as of the year of the
amendment.  Id.  The plaintiffs were subsequently terminated
before their 62nd birthdays, and the amendments resulted in their
receiving lower benefits than they would have received had they
remained employed until age 62.  Id. at 117-18.  The court held
that the plaintiff's state law claims for breach of contract were

14

not completely preempted because they did not raise a question of
the plaintiffs' eligibility for benefits.  Id. at 120.  Rather,
the plaintiffs' claims concerned "whether they were wrongfully
terminated from employment after an alleged oral contract of
employment for a term."  Id.  The plaintiffs sought "compensatory
damages for wages and pension, health, life and disability
benefits that they would have been entitled to had the alleged
contract to work until age 62 not been breached."  Id.

The plaintiffs' claims are distinguishable from those
in Pizlo.  They are not alleging breach of a contract for
employment for a term.  Rather, they are alleging they were
promised benefits under an ERISA plan and their employer did not
deliver those benefits.  Whereas in Pizlo the plaintiffs sought
health, life and disability benefits as compensatory damages, the
plaintiffs here appear to seek them as expectation damages.  The
court is, accordingly, unpersuaded that the court's analysis of
the claims in Pizlo is relevant here.

The plaintiffs also analogize their state claims to
those asserted in Smith v. Cohen Benefit Group, Inc., 851 F.
Supp. 210 (M.D.N.C. 1993).  In Smith, the plaintiff's employer
changed health benefit plans when it merged with another company.
Id. at 211.  During the transition, the plan administrator told

15

the prospective participant employees that if they were covered
under the old plan, they would also be covered under the new
plan.  Id.  The plaintiff, in reliance on this representation,
chose not to convert his coverage under the old plan to a private
policy within the time he was eligible to do so, and instead
enrolled himself and his family in the new plan unaware that the
new plan contained an exclusion for preexisting conditions.  Id.
at 211-12.  When his daughter was hospitalized and coverage was
denied on the basis of a preexisting condition, the plaintiff
sued his employer, the plan, and the plan administrator under
ERISA and state law.  Id. at 212.  The court, noting that the
plaintiff's damages could be measured by benefits that he could
have received under the foregone option of a private policy, held
that the plaintiff's claim of detrimental reliance against the
plan administrator related only indirectly to the ERISA benefit
plan, and, so, was not completely preempted.

        The court agrees with the plaintiffs that their state
claims are similar to those alleged in Smith to the extent that
the plaintiffs seek damages in the form of benefits foregone when
they left their employment with the state to work for BrickStreet
in reliance on BrickStreet's representations of disability
benefits without a preexisting condition limitations.  This is

the reason that the court held in its September 25, 2008, opinion
that the plaintiffs' claims were neither preempted nor completely
preempted.  However, since that opinion and order was entered,
the plaintiffs have indicated that they seek more than just
reliance damages.  They also seek damages measured by
BrickStreet's ERISA plan benefits.  To the extent they seek plan
benefits, their state claims relate to an ERISA benefit plan as
in Chapman and are distinguishable from the claims alleged in
Smith.  Their claim are, accordingly, completely preempted.

The plaintiffs' final contention in their motion to
remand is that their state law claims are not preempted because
the representations on which they relied were made before
BrickStreet's ERISA plan came into existence.  As BrickStreet
aptly notes, the Fourth Circuit's decision in Elmore v. Cone
Mills Corp., 23 F.3d 855 (4th Cir. 1994), suggests that the
timing of the representations does not matter.  See Elmore, 23
F.3d at 863 (holding that plaintiffs' state law claims including
breach of contract and fraud, which were based on representations
made before the employee stock ownership plan was adopted, were
related to an ERISA-covered plan and were preempted).

17

IV. Conclusion


Based upon the foregoing, the court concludes that it has subject matter jurisdiction over the plaintiffs' claims inasmuch as the plaintiffs seek plan benefits pursuant to ERISA sections 514(a) and 502(a) in addition to damages under state law.  It is, accordingly, ORDERED that the plaintiffs' motions to remand be, and they hereby are, denied.


The Clerk is directed to forward copies of this written opinion and order to all counsel of record.

DATED:  August 20, 2009


John T. Copenhaver, Jr.
United States District Judge